IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **WENDY JANE SMITH, individually and** § | | |
| as Mother and Natural Guardian of § | | |
| **JM NMB, JM NMB** § | | **PLAINTIFFS** |
| § | | |
| v. § | | Civil Action No. 1:08cv370HSO-JMR |
| § | | |
| **MISSISSIPPI SECURITY POLICE, INC.,** § | | |
| et al. § | | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [56] of Defendant Mississippi Security Police ("MSP"), for Summary Judgment, in the above captioned cause. Plaintiff has filed a Response [68], and Amended Response [84], and MSP a Reply [72], and Supplemental Reply [83]. After consideration of the submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, and because the Court concludes that genuine issues of material fact remain for trial, MSP's Motion should be denied.

I. BACKGROUND

JM NMB, a minor, was enrolled as a cadet at Eagle Point Christian Academy ("EPCA"), an all-boys, military school located in Lucedale, Mississippi, when, on or about July 11, 2005, he suffered a broken ankle as a result of the alleged negligent or intentional acts of two EPCA drill instructors, Terrance Coleman and Jay Bens, with whom he was wrestling. *See* Pls.' Compl. at ¶ XXIII; JM NMB Dep. at p. 63-65,

attached as Ex. "G" to Pl.'s Resp. The alleged injury occurred in the evaluation barracks ("eval barracks"), which housed EPCA cadets with behavioral problems. *See* Best Dep. at p. 27, attached as Ex. "A" to Pls.' Resp.

On or about April 11, 2005, which was prior to JM NMB's arrival at EPCA, the George County Sheriff's Department called MSP to provide emergency security at EPCA in response to a riot that had occurred among the cadets. *See* Best Dep. at p. 10-12, attached as Ex. "A" to Pls.' Resp. MSP orally agreed at that time "to provide safety and security for the facility, which included the cadets." *See id.* at p. 14, 22. On or about April 14, 2005, the Chancery Court of George County, Mississippi, Youth Court Division, entered an Order directing EPCA to:

> ...hire and maintain on the premises an independent security firm to be responsible for the security and safety of the premises. The security firm shall inspect security and safety of the premises and make all reasonable arrangements to correct any deficiencies....The Academy and the security firm may enter into a contract for any additional services or responsibilities set forth by the parties.
>
> * * *
>
> Video surveillance shall be placed in all areas of the facility where children are regularly present....

Chancery Court Order, attached as Ex. "C" to Pls.' Resp.

In May 2005, EPCA and MSP entered into a written contract, whereby MSP was to provide security services at EPCA. *See* Best Dep. at p. 21-22, attached as Ex. "A" to Pls.' Resp. MSP was providing security services to EPCA at the time of JM NMB's injury on July 11, 2005. There is no dispute that neither MSP officers nor video surveillance were present in the eval barracks at the time of JM NMB's injury.

*See* Best Dep. at pp. 39, 82, attached as Ex. "A" to Pls.' Resp.

Plaintiffs filed their Complaint in the Circuit Court of George County, Mississippi, on June 30, 2008, asserting claims against MSP, Bethel Boys Academy, Eagle Point Christian Academy, LLC, Pine View Academy, LLC, Gulf Coast Academy, LLC, and John Doe 1 (Drill Instructor "Bens"), John Doe 2 (Drill Instructor "Coleman"), and John Does 3-7 ("Defendants")[1] for misrepresentation, negligence, emotional distress, pain and suffering, fraud, and breach of contract as to Wendy Jane Smith, and for negligence, negligent and intentional assault and battery, and negligent and intentional infliction of emotional distress, as to JM NMB. *See* Pl.'s Compl. Plaintiffs also sought punitive damages. MSP removed the case to this Court on August 13, 2008. *See* Notice of Removal [2]. Terrence Coleman was later substituted by Text Order September 23, 2009, for Defendant John Doe 2. A Clerk's Entry of Default has since been entered against Gulf Coast Academy, LLC, Bethel Boys Academy, LLC, Eagle Point Christian Academy, LLC, and Pine View Academy, LLC. *See* Clerk's Entry of Default [19], [21]. MSP now seeks to have Plaintiffs' claims against it dismissed on grounds that MSP did not owe a duty to Plaintiff while he was in the eval barracks. In the alternative, MSP argues that JM NMB's injuries were caused by an intervening cause. *See* Def.'s Mot. at p. 2.

---

[1]Horne, LLP, is identified as a Defendant on the docket sheet. However, it was not identified as a Defendant in the Complaint, nor was it later substituted for a John Doe Defendant.

## II. DISCUSSION

A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," it is important to remember that only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since "there is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *See Anderson*, 477 U.S. at 249.  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *See Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697, 699 (S.D. Miss. 2008).

Because this is a case of diversity jurisdiction, the Court must apply state substantive law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938*); Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.  <u>Negligence Standard</u>

To succeed on their claims, which sound in negligence, Plaintiffs must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury'; (2) a breach of that duty; (3) causal relationship between the breach and alleged injury; and (4) injury or damages." *Meena v. Wilburn*, 603 So. 2d 866, 870 n.5 (Miss. 1992) (*citing* and *quoting*

*Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987)). The existence of a duty and breach of that duty are essential elements prior to any finding of negligence. *See Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (*citing Strantz v. Pinion*, 652 So. 2d 738, 742 (Miss. 1995)).

"The important component of the *existence of the duty* is that the injury is '*reasonably foreseeable*,' and thus it is appropriate for the trial judge to decide." *Id*. (emphasis in original) (*quoting Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991)). "While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury." *Id*. Mississippi courts have held that the determination of the existence *vel non* of a duty of care is a question of law to be decided by the court. *See id. (citing Foster by Foster v. Bass*, 575 So. 2d 967, 972 (Miss. 1990)).

"When the conduct of the actor is a substantial factor in bringing about the harm to another then, 'the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.'" *Id.* at 1144-45 (*quoting* Restatement (Second) of Torts, § 435 (1965)). "[D]efendants 'cannot escape liability because a particular injury could not be foreseen, if *some* injury ought to have been reasonably anticipated." *Id*. at 1145 (emphasis in original) (*quoting Delta Elec. Power Ass'n v. Burton*, 126 So. 2d 258, 261 (1961)).

"A duty also exists where a party contracts to undertake or otherwise assumes a duty." *Doe v. Wright Security Services, Inc.*, 950 So. 2d 1076, 1080 (Miss. Ct. App.

2007). "This duty extends to third party beneficiaries." *Id.* (*citing Rein*, 865 So. 2d at

1145). As explained by the Mississippi Supreme Court in *Rein*,

> [i]n order for a third person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.

*Rein*, 865 So. 2d at 1146 (*quoting Hanberry Corp. v. State Bldg. Comm'n*, 390 So. 2d 277, 279 (Miss. 1980)).

C.  Whether MSP Owed a Duty

In determining whether summary judgment is appropriate under the facts of this case, the Court is guided by the Mississippi Supreme Court's decision in *Rein v. Benchmark Construction Co.*, 865 So. 2d 1134 (Miss. 2004). In *Rein*, a nursing home patient died as a result of a fire ant attack, which occurred in her bed. *See id.* at 1136-37. The patient's husband brought a wrongful death action against, *inter alia*, Natural Accents, a landscaping company retained by the nursing home. *See id.* at 1137. The record indicated that Natural Accents had contracted with the nursing home to provide "ant bed control." *Id.* at 1148. The Court held:

> [t]hat evidence shows, as a matter of law, that Natural Accents obligated itself, by its own express terms, to *some* duty to inspect and treat ant beds at Silver Cross. *The scope of that duty is a proper question for the trier of fact.* The foreseeability of Mrs. Rein's injuries and death to Natural Accents is also a jury question. Further, the same trier of fact should determine the significance as related to causation of the failure by Natural Accents to comply with the terms of the contract.

*Id.* (emphasis added).

There is no dispute between the parties in this case that MSP obligated itself through the contract to some duty to provide security to, and monitor, EPCA and those present at the facility, which would obviously include the cadets. The contract EPCA and MSP entered into was entitled "Work for Hire Agreement" ("Agreement"), and provided that "MSP will provide: Security/Correctional Officers to EPCA for security of the facilities." Work for Hire Agreement, attached as Ex. "D" to Pls.' Resp. It also stated that "MSP shall have sole authority to monitor and determine the type and necessity of all security video systems at Eagle Point Christian Academy." *Id.* MSP asserts that its

> ...contractual undertaking was to provide safety and security services for the facility, including those present. (Depo. Best at 23). MSP agreed in the contract to provide two (2) roaming security officers to monitor the perimeter, stay alert to and prevent student fights, runaways or other out of control behavior. (Depo. Best at 45;46; Depo. Wooten at 20.) MSP contracted to be responsible for monitoring and safeguarding the video system at EPCA. (Depo. Best at 47.) MSP also placed direct contact staff on the premises to implement the program model at EPCA, build trust and dialogue with the cadets and provide a level of safety and security. (Depo. Best at 62.)....

Mem. in Supp. of Def.'s Mot. at p. 2; *see also* EPCA Initial Proposal for Security, attached as Ex. "J" to Def.'s Mot. In addition, MSP's Federal Rule of Civil Procedure 30(b)(6) representative testified that MSP's job was to provide safety and security services for the facility, which included the cadets. *See* Best Dep. at p. 22-23, attached as Ex. "A" to Pls.' Resp. It was part of MSP's job to intervene if a cadet was treated improperly, unfairly, cruelly, or was otherwise abused. *See id.* at p. 86.

MSP couches its arguments in terms of whether it owed a duty. Though it does not appear to dispute that it owed some duty, it contends that such duty did not extend to protect Plaintiff JM NMB from injuries sustained by the acts of EPCA drill instructors Coleman and Bens. *See* Mem. in Supp. of Mot. at p. 11-12. "The important component of the *existence of the duty* is that the injury is '*reasonably foreseeable...*'" *Rein*, 865 So. 2d at 1143 (emphasis in original) (*quoting Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991)). MSP argues that "[b]ecause no prior notice of drill instructor Coleman and Bens' intention to wrestle with Plaintiff was given to MSP, the injury was not foreseeable," and MSP therefore had no legal duty to protect Plaintiff. *See* Mem. in Supp. of Mot. at p. 14. However, as the Mississippi Supreme Court has held, "defendants 'cannot escape liability because a particular injury could not be foreseen, if *some* injury ought to have been reasonably anticipated." *Rein,* 865 So. 2d at 1145 (emphasis in original) (*quoting Delta Elec. Power Ass'n v. Burton*, 126 So. 2d 258, 261 (1961)). Based on the record, the Court is of the opinion that JM NMB's injury was sufficiently reasonably foreseeable to support the existence of a duty owed by MSP.

The record establishes that MSP was first called to EPCA in response to student riots. *See* Best Dep. at p. 11, attached as Ex. "A" to Pls.' Resp. The evidence shows that one purpose of MSP's presence at EPCA was to "prevent student fights, runaways or other out of control behavior." Mem. in Supp. of Def.'s Mot. at p. 2; Initial Proposal for Security, attached as Ex. "E" to Pls.' Resp.; *see also Doe v. Wright Security Services, Inc.*, 950 So. 2d 1076, 1081 (Miss. Ct. App. 2007) (finding that

where one purpose of the security firm's contract was to prevent violence or altercations among the alternative school students, sexual harassment of a student was not only foreseeable, as a matter of law the security firm owed a duty to minimize risks to the student's safety). Prior to signing the written contract, MSP was aware of allegations of cadet abuse from drill instructors, and also intervened in an incident where a drill instructor slapped a cadet. *See* Best Dep. at pp. 16-17, attached as Ex. "C" to Def.'s Mot.; Wooten Dep. at pp. 32-33, attached as Ex. "D" to Def.'s Mot. A MSP security officer also overheard an argument between the owner of EPCA, John Fountain, and a cadet, where Fountain was "screaming [and] hollering" and the cadet was "very emotional and very upset." Wooten Dep. at p. 33, attached as Ex. "B" to Pls.' Resp. Based upon the foregoing, the Court concludes that MSP owed a legal duty in this case.

D.  Scope of MSP's Duty

While a duty existed for MSP to monitor and provide security services to EPCA, the scope of that duty is contested, and remains unclear. MSP has presented evidence that its responsibilities did not extend to the eval barracks. *See* Best Dep. at p. 28-29, attached as Ex. "C" to Def.'s Mot.; Wooten Dep. at p. 28-29, attached as Ex. "D" to Def's Mot; Fountain Aff., attached as Ex. "E" to Def.'s Mot. However, a reasonable jury could also find from the evidence in the record that MSP's responsibilities to the cadets covered the entire EPCA premises. *See e.g.*, Agreement, attached as Ex. "D" to Pls.' Resp.; Initial Proposal, attached as Ex. "E" to Pls.' Resp.; Chancery Court Order, attached as Ex. "C" to Pls.' Resp. Whether the scope of MSP's

duty to protect JM NMB extended to the eval barracks, and if so, whether that duty was breached, are questions of fact for the jury's determination.

The facts of this case are distinguishable from those in *Alqasim v. Capitol City Hotel Investors, LLC*, 989 So. 2d 488 (Miss. Ct. App. 2008), upon which MSP relies. In *Alqasim*, the plaintiff, a patron of a Hampton Inn hotel, was robbed and shot in the leg of the hotel parking lot. The plaintiff sued the security firm for failing to provide adequate protection. The security firm had contracted with Hampton Inn to protect its property, employees, and guests. The Court of Appeals found that though plaintiff was a third-party beneficiary of the contract between Hampton Inn and the security firm, there was no evidence of a breach of any duty by the security firm since its actions were consistent with its standard operating procedures. The Court held that "[the security firm] did not owe a duty to [plaintiff] beyond the terms and conditions of its security contract." *Id*. at 492. There was no dispute as to the scope of the security firm's duty in *Alqasim*. Here, the record contains no standard operating procedures to provide clear guidance as to the scope of MSP's duties with regard to the eval barracks. The contract is silent on whether it included the eval barracks. Given the contract's lack of clarity on this point, as well as the other evidence in the record, questions of fact remain regarding the scope of MSP's duty, whether there was a breach of that duty, and causation. Summary judgment is not appropriate.

E. <u>Intervening Cause</u>

MSP argues that JM NMB's injuries "were caused by an intervening cause, the criminal actions of drill instructors Coleman and Bends [sic]." Def.'s Mot. at p. 2.

-11-

"Mississippi law has long held that a cause of injury is not superseding if it is foreseeable." *Foradori v. Harris*, 523 F.3d 477, 495 (5th Cir. 2008). Even a criminal act by a third party is not a superseding cause if it was foreseeable." *Id*. (*citing Glover v. Jackson State University*, 968 So. 2d 1267, 1279-80 (Miss. 2007)).

> [I]n satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, it is enough to show that the plaintiff's injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence.

*Id*. (*citing Glover*, 968 So. 2d at 1278-79).

"Whether a cause of injury is foreseeable is a question for the jury." *Id*. (*citing O'Cain v. Harvey Freeman and Sons, Inc.*, 603 So. 2d 824, 830 (Miss. 1992)) ("the question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact."). The Court is of the opinion that there is sufficient evidence from which a jury could reasonably conclude that the alleged acts of the EPCA drill instructors were foreseeable. Summary judgment on this basis would be inappropriate.

F.  Punitive Damages Claim

Plaintiffs assert that MSP acted with a "willful, wanton, reckless, grossly negligent and/or intentional disregard for the safety of JM NMB," and request punitive damages in an amount to exceed $80,000. *See* Pls.' Compl. ¶ XXV. Mississippi Code § 11-1-65(a) states that:

> [p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence, which evidences a willful, wanton or reckless disregard for the safety of others, or

-12-

committed actual fraud.

M<small>ISS</small>. C<small>ODE</small> § 11-1-65(a). The Court questions whether the proof adduced thus far rises to the level of clear and convincing evidence. However, given the state of the record and the presence of factual disputes which also preclude summary judgment, the Court is of the opinion that summary judgment would not be appropriate on this claim at this juncture.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiffs, and resolving all factual disputes in their favor, the Court finds there are material questions of fact remaining for trial, such that MSP's Motion should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [56] of Defendant Mississippi Security Police ("MSP"), for Summary Judgment, filed pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 56, should be and hereby is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 6th day of July, 2010.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE